**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

GUILLERMO REYES, individually and on behalf
of all others similarly situated,

                  Plaintiff,

    -against-

EL CINCO CORP., EL TRIO CORP., and
DEYANIRA SANTAMARIA a/k/a DEYANIRA
SANTAMARIA LUNA, Individually,

                  Defendants.

---------------------------------------------------------------------------X

Civil Action No. _____

**COMPLAINT**

**ACTION UNDER**
**29 U.S.C. § 216(b)**

**JURY TRIAL DEMANDED**

Plaintiff GUILLERMO REYES ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, Stillman Legal, P.C., as and for his Complaint against Defendants EL CINCO CORP. and EL TRIO CORP. (together, the "Corporate Defendants") and DEYANIRA SANTAMARIA, also known as DEYANIRA SANTAMARIA LUNA (the "Individual Defendant," and together with the Corporate Defendants, "Defendants"), alleges as follows, upon personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters:

**<u>NATURE OF THE ACTION</u>**

1. Plaintiff brings this action to recover unpaid overtime wages, unpaid minimum wages, unpaid spread-of-hours compensation, unpaid earned wages, statutory damages, liquidated damages, prejudgment and post-judgment interest, attorneys' fees, and costs under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Labor Law (the "NYLL"), including NYLL Articles 6 and 19, and the New York State Hospitality Industry Wage Order, 12 N.Y.C.R.R. Part 146 (the "Hospitality Wage Order").

2. Defendants own and operate a restaurant, bar, and lounge located at 102-01 44th Avenue, Corona, New York 11368, in Queens County (the "Establishment"), which is held out to

the public under the name "Trio Bar and Restaurant, Bar and Lounge." The restaurant occupies the first floor of the premises and the bar and lounge occupy the second floor.

3.   Plaintiff was employed by Defendants at the Establishment in non-exempt positions. His duties consisted of manual and physical labor, including cooking, washing dishes, preparing food, making deliveries, cleaning, and performing other tasks assigned to him by Defendants.

4.   Throughout his employment, Defendants paid Plaintiff a fixed weekly salary, in cash, without regard to the number of hours he actually worked. Defendants did not require Plaintiff to record his hours, did not maintain accurate records of the hours he worked, and did not pay him any overtime premium for the many hours he worked each week in excess of forty.

5.   During the second period of his employment, Plaintiff regularly worked approximately seventy-nine (79) hours per week, dividing his time between an evening shift in the first-floor restaurant and an overnight shift in the second-floor bar. For that work he received a flat weekly salary of $980.00 plus $50.00 for each bar shift, and no overtime compensation whatsoever.

6.   During the final period of his employment, Plaintiff worked Saturday overnight shifts in the bar for a flat payment of $50.00 per shift — an effective rate of approximately $6.25 to $6.67 per hour, which was below both the federal minimum wage and the substantially higher New York minimum wage.

7.   Defendants also failed to pay Plaintiff an additional hour of pay at the basic minimum hourly rate for each workday on which the interval between the beginning and the end of his workday exceeded ten hours, as required by 12 N.Y.C.R.R. § 146-1.6.

8.   In addition, Defendants failed to pay Plaintiff the weekly restaurant salary he earned during three consecutive workweeks in April 2026, totaling $2,940.00. Those wages have never been paid and remain due and owing.

9.   Defendants further failed to furnish Plaintiff with the wage notice required by NYLL § 195(1) at the time of either hiring, and failed to furnish him with accurate wage statements with each payment of wages as required by NYLL § 195(3). Plaintiff was never told, and never learned, what his hourly rate of pay was or how many hours of work his weekly salary was intended to cover.

2

10.    Plaintiff brings his FLSA overtime claim as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated non-exempt employees of Defendants. Plaintiff brings his remaining claims individually.

11.    Plaintiff seeks unpaid wages, liquidated damages, statutory damages, prejudgment and post-judgment interest, attorneys' fees, and costs, together with such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

13.    This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Both sets of claims arise from the same employment relationship, the same compensation policies and practices, and the same workweeks.

14.    This Court has personal jurisdiction over the Corporate Defendants because each is a New York business corporation that maintains its principal place of business in this District, and over the Individual Defendant because she resides in this District and conducts business in this District.

15.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside in this District, and because a substantial part of the events and omissions giving rise to Plaintiff's claims — including all of the work Plaintiff performed and all of the payments and non-payments at issue — occurred at the Establishment in Corona, Queens County, New York.

## PARTIES

**Plaintiff**

16.    Plaintiff GUILLERMO REYES is an adult individual who resides in Queens, New York.

17. At all times relevant to this Complaint, Plaintiff was employed by Defendants at the Establishment.

18. At all relevant times, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e), NYLL §§ 190(2) and 651(5), and 12 N.Y.C.R.R. § 146-3.2.

19. At all relevant times, Plaintiff was a non-exempt employee. His work consisted of routine manual labor performed under Defendants' direction, and did not require the exercise of discretion or independent judgment with respect to matters of significance. Plaintiff did not hire, fire, direct, or supervise other employees; he did not manage the Establishment or any customarily recognized department or subdivision of it; and he did not perform work requiring advanced knowledge in a field of science or learning. Plaintiff therefore did not fall within the executive, administrative, or professional exemptions set forth in 29 U.S.C. § 213(a)(1) and the regulations promulgated thereunder, or within the corresponding exemptions under the NYLL and the Hospitality Wage Order.

20. Plaintiff has consented in writing to become a party plaintiff in this action pursuant to 29 U.S.C. § 216(b), and his written consent is being filed together with this Complaint.

**The Corporate Defendants**

21. Defendant EL CINCO CORP. is a domestic business corporation organized and existing under the laws of the State of New York. Its Certificate of Incorporation was filed with the New York Department of State on April 21, 2022, under Filing Number 220421003363 and DOS ID No. 6464133.

22. The Certificate of Incorporation of EL CINCO CORP. states that the county within the State of New York in which the office of the corporation is located is Queens, and designates the Secretary of State as the corporation's agent for service of process, directing that process be mailed to the corporation at 102-01 44th Avenue, Corona, New York 11368.

23. Defendant EL TRIO CORP. is, upon information and belief, a domestic business corporation organized and existing under the laws of the State of New York, with its principal place of business at the Establishment, 102-01 44th Avenue, Corona, New York 11368.

24.    Upon information and belief, the Corporate Defendants own, operate, and control the Establishment at 102-01 44th Avenue, Corona, New York 11368 — the same address designated in EL CINCO CORP.'s Certificate of Incorporation for service of process — and that Establishment is held out to the public under the name "Trio Bar and Restaurant, Bar and Lounge."

25.    Upon information and belief, "Trio Bar and Restaurant, Bar and Lounge" is a trade name or assumed name under which the Corporate Defendants conduct business at that address.

26.    Upon information and belief, the Corporate Defendants are commonly owned and commonly managed, share common principals and officers, and operate the Establishment as a single integrated enterprise.

27.    Upon information and belief, to the extent that the first-floor restaurant operations and the second-floor bar and lounge operations were nominally conducted by separate corporate entities, those entities had interrelated operations, common management, centralized control of labor relations, and common ownership and financial control, and any division between them is one of form rather than of substance.

28.    Plaintiff was hired by one person, scheduled by that same person, supervised by that same person, and paid by that same person. He was assigned to work in the restaurant, in the bar, or in both, without regard to any distinction between corporate entities, and he was never informed that he was employed by more than one employer.

29.    At all relevant times, each of the Corporate Defendants was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d), NYLL §§ 190(3) and 651(6), and 12 N.Y.C.R.R. § 146-3.3, and the Corporate Defendants jointly employed Plaintiff and constitute joint employers and a single employer of Plaintiff within the meaning of the FLSA, *see* 29 C.F.R. Part 791, and the NYLL.

**The Individual Defendant**

30.    Defendant DEYANIRA SANTAMARIA is an adult individual who, upon information and belief, resides in Queens County, New York.

31.    Upon information and belief, DEYANIRA SANTAMARIA is the same individual as DEYANIRA SANTAMARIA LUNA, who executed the Certificate of Incorporation of EL

5

CINCO CORP. as its incorporator and whose address is stated therein as 10242 46th Avenue #1, Corona, New York 11368.

32.   At all relevant times, the Individual Defendant owned, operated, managed, and controlled the Establishment, including both the first-floor restaurant and the second-floor bar and lounge, and, upon information and belief, owned and controlled each of the Corporate Defendants.

33.   The Individual Defendant hired Plaintiff.

34.   The Individual Defendant set and changed Plaintiff's work schedule, assigned him to the restaurant, to the bar, or to both, and directed and supervised his work.

35.   The Individual Defendant determined Plaintiff's rate and method of compensation, set his weekly salary at $980.00 and his bar rate at $50.00 per shift, and personally paid Plaintiff his wages in cash.

36.   The Individual Defendant possessed the authority to discipline and to discharge Plaintiff.

37.   Upon information and belief, the Individual Defendant maintained — or made the decision not to maintain — the employment records concerning Plaintiff that federal and state law required Defendants to keep, and made the decision to compensate Plaintiff in cash without wage statements.

38.   By reason of the foregoing, at all relevant times the Individual Defendant was Plaintiff's "employer" within the meaning of 29 U.S.C. § 203(d), NYLL §§ 190(3) and 651(6), and 12 N.Y.C.R.R. § 146-3.3, and is jointly and severally liable with the Corporate Defendants for the violations alleged herein.

**Joint and Single Employment**

39.   Defendants jointly employed Plaintiff. The first-floor restaurant and the second-floor bar and lounge were operated as a single, integrated business at a single address, under common ownership, common management, and common control of labor relations, with interrelated operations and a single individual — the Individual Defendant — who hired, scheduled, supervised, and paid the employees of both.

6

40.    Each Defendant had the power to hire and fire Plaintiff, to control the terms and conditions of his employment, and to determine the rate and method of his compensation. Each Defendant is therefore jointly and severally liable to Plaintiff for the violations alleged herein.

41.    Plaintiff was assigned to work in the restaurant, in the bar, or in both on any given day by the same person, pursuant to a single schedule. Accordingly, all hours Plaintiff worked in a workweek in the restaurant and in the bar must be aggregated in determining his hours worked and his regular rate of pay, and all compensation he received for that work must be included in his regular rate of pay.

## COVERAGE UNDER THE FLSA AND THE NYLL

### FLSA Enterprise Coverage

42.    At all relevant times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

43.    Defendants have had employees, including Plaintiff, engaged in commerce or in the handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. Those goods and materials include, without limitation, food, produce, meat, beverages, cooking equipment, utensils, tableware, packaging, and cleaning supplies that were manufactured, produced, or grown outside the State of New York.

44.    Upon information and belief, at all relevant times Defendants' annual gross volume of sales made or business done was not less than $500,000, exclusive of excise taxes at the retail level that are separately stated. This allegation is made upon information and belief based upon the nature and scale of Defendants' operations, including that the Establishment occupies two floors and operates as a combined restaurant, bar, and lounge; that the restaurant operated seven days per week; that the bar served alcoholic beverages overnight until as late as approximately 5:00 a.m.; and that Defendants employed kitchen, service, and bar personnel in order to do so. The facts bearing on Defendants' revenues are peculiarly within Defendants' knowledge and control.

45.    Because the Corporate Defendants perform related activities through unified operation and common control for a common business purpose, they constitute a single enterprise

within the meaning of 29 U.S.C. § 203(r)(1), and their annual gross volume of sales made or business done is properly aggregated for purposes of 29 U.S.C. § 203(s)(1)(A)(ii).

**FLSA Individual Coverage**

46.    In addition, and in the alternative, Plaintiff was individually engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1). In the course of his employment, Plaintiff regularly handled, prepared, cooked, and otherwise worked upon goods and materials — including food, produce, and beverages — that had been produced outside the State of New York and had moved in interstate commerce, and he regularly transported and delivered Defendants' goods to Defendants' customers.

**NYLL and Hospitality Wage Order Coverage**

47.    At all relevant times, Defendants were "employers" within the meaning of NYLL §§ 190(3) and 651(6), and Plaintiff was an "employee" within the meaning of NYLL §§ 190(2) and 651(5). Plaintiff is not exempt from the protections of NYLL Articles 6 and 19.

48.    At all relevant times, Defendants operated a "restaurant" and were employers in the "hospitality industry" within the meaning of 12 N.Y.C.R.R. § 146-3.1, and were therefore subject to the Hospitality Wage Order.

49.    Plaintiff received no tips from customers at any time during his employment. Defendants did not claim, and were not entitled to claim, any tip credit or tip allowance, or any meal or lodging credit, against the minimum wages owed to Plaintiff.

## FACTUAL ALLEGATIONS

**Plaintiff's Duties and Working Conditions**

50.    Plaintiff's duties at the Establishment included cooking, washing dishes, preparing food, making deliveries, cleaning the kitchen and the premises, and performing other manual tasks assigned to him by Defendants. Plaintiff performed many different functions and was routinely moved among them according to Defendants' needs.

51.    Plaintiff did not work at his own convenience. He was required to report to work in accordance with schedules set by the Individual Defendant, and once scheduled for a shift, he was not free to come and go as he pleased.

52.    Throughout his employment, Defendants paid Plaintiff entirely in cash. Plaintiff's terms of compensation were communicated to him orally and were never reduced to writing.

53.    During the period in which Plaintiff worked in both the restaurant and the bar, Defendants paid him in two separate cash payments: the weekly restaurant salary was ordinarily paid on Sunday or Monday, and occasionally on Tuesday, and the bar compensation was paid on Sunday night. Both payments were made by the Individual Defendant.

54.    Defendants never required Plaintiff to punch in or out. Plaintiff never used a time clock, time sheet, or any other timekeeping device or system, and Defendants did not otherwise record the hours he worked.

55.    Upon information and belief, Defendants did not make, keep, or preserve accurate records of the daily and weekly hours Plaintiff worked or of the wages paid to him, as required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516, and by NYLL § 195(4) and 12 N.Y.C.R.R. § 146-2.1.

56.    Plaintiff had no established meal period. When he ate, he did so while continuing to perform his work, or while remaining on duty and subject to interruption and to Defendants' call. Plaintiff was never completely relieved from duty for the purpose of eating a regular meal, and Defendants therefore provided him with no bona fide meal period within the meaning of 29 C.F.R. § 785.19. All of that time constituted compensable hours worked.

**The First Period of Employment**

57.    Plaintiff was employed by Defendants at the Establishment from in or about May 2023 until in or about the summer of 2024 (the "First Period"), a period of approximately one year.

58.    During the First Period, Plaintiff worked six days per week, from approximately 3:00 p.m. until approximately 12:00 a.m., and on some days until approximately 1:00 a.m.

59.    During the First Period, Plaintiff therefore worked approximately fifty-four (54) hours per week, and in weeks in which his shifts ended at approximately 1:00 a.m., as many as approximately sixty (60) hours per week.

60.    During the First Period, Defendants paid Plaintiff a fixed salary of $980.00 per week, in cash, regardless of the number of hours he actually worked.

61.    Defendants paid Plaintiff no additional compensation and no overtime premium for the hours he worked in excess of forty in a workweek during the First Period.

**The Second Period of Employment**

62.    Plaintiff was employed by Defendants at the Establishment from in or about April 2025 through the end of April 2026 (the "Second Period"). The Individual Defendant rehired Plaintiff to work at the Establishment after a period of separation.

63.    During the Second Period, Plaintiff worked in the first-floor restaurant seven days per week, from approximately 3:00 p.m. until approximately 12:00 a.m., except on the four nights per week when he also worked a bar shift, when he ordinarily left the restaurant at approximately 11:30 p.m.

64.    In addition, during the Second Period Plaintiff worked overnight shifts in the second-floor bar on Fridays, Saturdays, Sundays, and Mondays.

65.    On each of those four days, Plaintiff ordinarily left the restaurant at approximately 11:30 p.m., traveled home to shower and change, and then returned to the Establishment to work in the bar from approximately 12:00 a.m. until approximately 4:30 a.m., and on some nights until approximately 5:00 a.m.

66.    During the Second Period, Plaintiff therefore worked approximately seventy-nine (79) hours per week. That total consists of approximately sixty-one (61) hours of restaurant work — approximately nine hours on each of the three days on which he did not work a bar shift, and approximately eight and one-half hours on each of the four days on which he did — together with approximately eighteen (18) hours of bar work, consisting of approximately four and one-half hours on each of four nights. In weeks in which his bar shifts ended at approximately 5:00 a.m., Plaintiff worked as many as approximately eighty-one (81) hours.

67.    During the Second Period, Defendants paid Plaintiff a fixed salary of $980.00 per week for his restaurant work, in cash, together with an additional $50.00 in cash for each bar shift he worked, for total weekly compensation of approximately $1,180.00.

68.    Defendants paid Plaintiff no overtime premium for any of the hours he worked in excess of forty in a workweek during the Second Period.

**The Third Period of Employment**

69.    Plaintiff's restaurant work ended at the end of April 2026. Beginning in or about May 2026, Plaintiff worked on Saturdays only, in the second-floor bar, from approximately 9:00 p.m. until approximately 4:30 a.m. or 5:00 a.m. the following morning — approximately seven and one-half (7.5) to eight (8) hours per shift (the "Third Period").

70.    Defendants paid Plaintiff $50.00 in cash for each such shift, and paid him no other compensation during the Third Period. That rate never changed.

71.    Plaintiff's compensation of $50.00 for a shift of approximately seven and one-half to eight hours yielded an effective hourly rate of approximately $6.25 to $6.67 per hour.

72.    Plaintiff's last day of work for Defendants was July 18, 2026.

**Wages That Defendants Never Paid**

73.    Defendants failed to pay Plaintiff the $980.00 weekly restaurant salary he earned during three consecutive workweeks in or about April 2026 — the workweeks of on or about April 7, April 14, and April 21, 2026 — in the total amount of $2,940.00.

74.    Defendants paid Plaintiff his $50.00-per-shift bar compensation for those workweeks, but paid him nothing for the restaurant work he performed during them.

75.    Defendants have never paid Plaintiff the restaurant wages he earned during those three workweeks, and those wages remain due and owing.

**Plaintiff's Regular Rate of Pay and Defendants' Failure to Pay Overtime**

76.    Defendants never told Plaintiff what his hourly rate of pay was. Defendants never told Plaintiff how many hours of work his $980.00 weekly salary was intended to compensate, and

never told him that his salary was intended to compensate him for hours worked in excess of forty per week. Plaintiff knew only that he was to receive $980.00 for a week of work.

77. Defendants gave Plaintiff no written notice of his rate or rates of pay and no wage statements from which the number of hours covered by his salary could have been determined. There was no agreement or mutual understanding between Plaintiff and Defendants that his fixed weekly salary compensated him for hours worked beyond forty in a workweek.

78. Under 12 N.Y.C.R.R. § 146-3.5(b), the regular hourly rate of a hospitality industry employee who is paid a weekly salary is determined by dividing the employee's total weekly earnings by the lesser of forty hours or the actual number of hours worked during that week. Plaintiff's weekly salary is therefore deemed to compensate him for forty hours of work.

79. Applying that methodology, Plaintiff's regular rate of pay during the First Period was approximately $24.50 per hour ($980.00 ÷ 40), and his lawful overtime rate was approximately $36.75 per hour.

80. During the First Period, Plaintiff worked approximately fourteen (14) overtime hours in each workweek, and as many as approximately twenty (20) overtime hours in workweeks in which his shifts ended at approximately 1:00 a.m., for which he received no compensation at all. Defendants thereby underpaid Plaintiff by approximately $514.50 to $735.00 in each such workweek.

81. Plaintiff's regular rate of pay during the Second Period was approximately $29.50 per hour ($1,180.00 ÷ 40), and his lawful overtime rate was approximately $44.25 per hour.

82. During the Second Period, Plaintiff worked approximately thirty-nine (39) overtime hours in each workweek, and as many as approximately forty-one (41) overtime hours in workweeks in which his bar shifts ended at approximately 5:00 a.m., for which he received no compensation at all. Defendants thereby underpaid Plaintiff by approximately $1,725.75 to $1,814.25 in each such workweek.

83. The hours and amounts alleged above are approximations, based upon the recurring schedules Plaintiff worked and the payments he received. The precise number of hours Plaintiff

worked, the precise amounts he was paid, and the precise amounts he is owed will be established by the records Defendants were required to make and keep, through discovery, and at trial.

**Minimum Wages**

84.    The federal minimum wage applicable throughout Plaintiff's employment was $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C).

85.    The basic minimum hourly wage applicable to Plaintiff's employment in New York City was $15.00 per hour during 2023, $16.00 per hour during 2024, $16.50 per hour during 2025, and $17.00 per hour during 2026. *See* NYLL § 652(1); 12 N.Y.C.R.R. § 146-1.2.

86. During the Third Period, Plaintiff's effective hourly rate of approximately $6.25 to $6.67 per hour fell below both the federal minimum wage of $7.25 per hour and the New York basic minimum hourly wage of $17.00 per hour. Defendants thereby failed to pay Plaintiff the minimum wage for each hour he worked during the Third Period.

87.    In addition, and pleaded in the alternative, to the extent it is determined that Plaintiff's weekly salary and nightly bar payments were intended to compensate him for all of the hours he actually worked during the Second Period, his effective hourly rate during that period was approximately $14.57 to $14.94 per hour ($1,180.00 ÷ 79 to 81 hours), which was below the New York basic minimum hourly wage of $16.50 per hour in 2025 and $17.00 per hour in 2026. In that event, Defendants also failed to pay Plaintiff the New York minimum wage for each hour he worked during the Second Period. Plaintiff does not seek to recover twice for the same hours.

**Spread of Hours**

88.    Under 12 N.Y.C.R.R. § 146-1.6, an employer must pay a hospitality industry employee one additional hour of pay at the basic minimum hourly rate for each day on which the spread of hours — the interval between the beginning and the end of the employee's workday — exceeds ten hours. That requirement applies to hospitality industry employees regardless of their regular rate of pay. *See* 12 N.Y.C.R.R. § 146-1.6(d).

89.    On each Friday, Saturday, Sunday, and Monday during the Second Period, Plaintiff's workday began at approximately 3:00 p.m. and ended at approximately 4:30 a.m. or 5:00 a.m. the following morning — a spread of approximately thirteen and one-half to fourteen hours. Both the

13

restaurant shift and the bar shift that followed it were worked at the same address, for the same employers, pursuant to a single schedule, and constituted a single workday.

90.    Defendants never paid Plaintiff any spread-of-hours compensation for any such workday.

**Defendants Provided No Wage Notice and No Wage Statements**

91.    Defendants never provided Plaintiff, at the time of his initial hiring or at the time of his rehiring or at any time thereafter, with the written notice required by NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2. Defendants never gave Plaintiff a notice containing his rate or rates of pay and the basis thereof; his overtime rate of pay; the regular pay day designated by the employer; the name of the employer and any "doing business as" names it uses; the physical address of the employer's main office or principal place of business and a mailing address if different; or the employer's telephone number.

92.    Defendants never provided Plaintiff with any such notice in English, and never provided him with any such notice in Spanish, which is Plaintiff's primary language. Plaintiff never signed any document concerning his rate of pay or his wages.

93.    Defendants never provided Plaintiff with an accurate statement of wages with any payment of wages, as required by NYLL § 195(3) and 12 N.Y.C.R.R. § 146-2.3. Plaintiff was handed cash and received no writing of any kind identifying the dates of work covered by the payment; his name, or the name, address, and telephone number of his employer; his rate or rates of pay and the basis thereof; his gross wages; any deductions or allowances claimed; his net wages; his regular hourly rate and overtime rate of pay; or the number of regular hours and overtime hours he had worked.

94.    As a direct result of Defendants' failure to provide the required wage notice and wage statements, Plaintiff did not know and could not determine the hourly rate at which his weekly salary credited his work, the overtime rate to which he was entitled, or the number of hours for which Defendants purported to be compensating him. Plaintiff knew only the flat weekly figure he was handed in cash.

14

95. Because Plaintiff was paid in cash, was never required to record his time, and never received a wage statement, he had no means of comparing the hours he actually worked against the wages he actually received, and no means of identifying or quantifying the shortfall between the compensation he received and the compensation the law required Defendants to pay him.

96. Plaintiff was thereby prevented from recognizing that he was being underpaid, from raising the underpayment with Defendants, from determining the amount of the wages Defendants had failed to pay him, and from seeking and recovering those wages in a timely manner. Plaintiff was also prevented from providing documentation of his wage rate or earnings to prospective landlords, creditors, or government agencies in connection with housing, credit, or public benefit applications; from verifying whether Defendants were making or reporting any tax withholdings on his behalf; and from filing accurate personal tax returns. Plaintiff experienced ongoing confusion and uncertainty about the terms of his compensation throughout his employment. Plaintiff was deprived of the use of the wages he had earned throughout that period, and continues to be deprived of them.

**<u>Willfulness and Defendants' Lack of Good Faith</u>**

97. Defendants' violations of the FLSA and the NYLL were willful, and were not undertaken in good faith.

98. Defendants are hospitality employers subject to well-established and widely publicized federal and state wage-and-hour obligations, including the obligation to pay overtime, to pay the minimum wage, to give employees written notice of their rates of pay, to furnish wage statements, and to keep accurate records of hours worked.

99. The Individual Defendant personally set Plaintiff's schedule, personally determined his compensation, and personally handed him his wages in cash each week. She therefore knew how many hours Plaintiff was working and knew what she was paying him for those hours.

100. Upon information and belief, Defendants knew that their compensation practices violated the FLSA and the NYLL, or showed reckless disregard for whether they did. Defendants paid Plaintiff exclusively in cash for the entirety of his employment; kept no record of the hours he worked; gave him no wage notice and no wage statements; communicated his terms of pay only orally; and paid him a flat weekly amount that did not vary no matter how many hours he worked.

Those practices operated to conceal the number of hours Plaintiff worked and the extent to which he was underpaid.

101.    Defendants had no reasonable grounds for believing that their failure to pay Plaintiff overtime wages, minimum wages, spread-of-hours compensation, and his earned weekly wages complied with the FLSA and the NYLL.

102.    Because Defendants' violations of the FLSA were willful, the three-year limitations period of 29 U.S.C. § 255(a) applies to Plaintiff's FLSA claims.

## COLLECTIVE ACTION ALLEGATIONS

103.    Plaintiff brings the First Cause of Action on behalf of himself and all other similarly situated persons pursuant to 29 U.S.C. § 216(b).

104.    The proposed collective is defined as: all current and former non-exempt employees employed by Defendants at the Establishment at any time within three years preceding the filing of this Complaint through the date of final disposition of this action, who worked more than forty hours in one or more workweeks and were not paid overtime compensation at one and one-half times their regular rates of pay (the "FLSA Collective").

105.    Defendants employed other non-exempt employees at the Establishment during the relevant period. In the restaurant, Plaintiff worked with a coworker known to him as Carolina, who opened the restaurant and worked until approximately 4:00 p.m., six or seven days per week. In the bar, Plaintiff worked alongside two coworkers known to him as Anselmo and Oswaldo, who worked the same overnight bar shifts as Plaintiff.

106.    Upon information and belief, Defendants compensated those employees in the same manner in which they compensated Plaintiff: in cash, without requiring them to record their hours, without maintaining records of the hours they worked, and in fixed weekly or per-shift amounts that did not vary with the number of hours they actually worked.

107.    These allegations are made upon information and belief based upon Plaintiff's own observations while working alongside those employees at the Establishment, and upon the uniform manner in which the Individual Defendant compensated the employees of the Establishment.

108.   Upon information and belief, each such employee worked more than forty hours in one or more workweeks, and Defendants failed to pay overtime compensation at one and one-half times his or her regular rate of pay, in the same manner and by the same conduct alleged as to Plaintiff.

109.   The identities and contact information of the members of the FLSA Collective are known only to Defendants and are contained in the records that Defendants were required by law to make and keep. Court-authorized notice should therefore issue pursuant to 29 U.S.C. § 216(b) to all members of the FLSA Collective, so that they may make an informed decision whether to join this action by filing written consents.

110.   Plaintiff brings the Second through Eighth Causes of Action individually and on his own behalf.

## FIRST CAUSE OF ACTION

### Failure to Pay Overtime Wages in Violation of the Fair Labor Standards Act

### 29 U.S.C. §§ 207 and 216(b)

### (On Behalf of Plaintiff and the FLSA Collective)

111.   Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

112.   At all relevant times, Defendants were the employers of Plaintiff and of the members of the FLSA Collective within the meaning of 29 U.S.C. § 203(d), and Plaintiff and the members of the FLSA Collective were Defendants' employees within the meaning of 29 U.S.C. § 203(e), engaged in commerce or employed by an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203(s)(1)(A) and 207(a)(1).

113.   Section 207(a)(1) of the FLSA required Defendants to compensate Plaintiff and the members of the FLSA Collective at a rate of not less than one and one-half times their regular rates of pay for all hours worked in excess of forty in a workweek.

114.   Defendants suffered and permitted Plaintiff and the members of the FLSA Collective to work in excess of forty hours in individual workweeks, and failed to pay them

17

overtime compensation at one and one-half times their regular rates of pay for those hours, in violation of 29 U.S.C. § 207(a)(1).

115. Defendants failed to make, keep, and preserve accurate records of the hours worked by and the wages paid to Plaintiff and the members of the FLSA Collective, as required by 29 U.S.C. § 211(c) and 29 C.F.R. Part 516. As a result, Plaintiff and the members of the FLSA Collective are entitled to prove the amount and extent of their uncompensated work as a matter of just and reasonable inference. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).

116. Defendants' violations of 29 U.S.C. § 207 were willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish that they acted in good faith or that they had reasonable grounds to believe their conduct complied with the FLSA.

117. As a direct and proximate result of Defendants' violations, Plaintiff and the members of the FLSA Collective are entitled to recover their unpaid overtime compensation; an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b); reasonable attorneys' fees and costs; and such other relief as the Court deems just and proper. The precise amounts due will be determined at trial.

**SECOND CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act**

**29 U.S.C. §§ 206 and 216(b)**

**(On Behalf of Plaintiff)**

118. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

119. Section 206(a) of the FLSA required Defendants to pay Plaintiff not less than the federal minimum wage of $7.25 per hour for each hour he worked.

120. During the Third Period, Defendants paid Plaintiff $50.00 for each shift of approximately seven and one-half to eight hours, an effective rate of approximately $6.25 to $6.67 per hour, which was below the federal minimum wage.

121. Defendants thereby failed to pay Plaintiff the minimum wage required by 29 U.S.C. § 206(a) for the hours he worked during the Third Period.

122. Defendants' violations of 29 U.S.C. § 206 were willful within the meaning of 29 U.S.C. § 255(a), and Defendants cannot establish that they acted in good faith or that they had reasonable grounds to believe their conduct complied with the FLSA.

123. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to recover his unpaid minimum wages; an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b); and reasonable attorneys' fees and costs. Plaintiff does not seek to recover the same wages twice under this and any other cause of action.

### THIRD CAUSE OF ACTION

**Failure to Pay Overtime Wages in Violation of the New York Labor Law**

**NYLL §§ 650 *et seq.*; 12 N.Y.C.R.R. §§ 146-1.4 and 146-3.5**

**(On Behalf of Plaintiff)**

124. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

125. At all relevant times, Plaintiff was Defendants' employee and Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(2)–(3) and 651(5)–(6), and Plaintiff's employment was subject to the Hospitality Wage Order.

126. Section 146-1.4 of Title 12 of the New York Codes, Rules and Regulations required Defendants to pay Plaintiff overtime compensation at a wage rate of one and one-half times his regular rate for every hour worked in excess of forty hours in a workweek.

127. Plaintiff's regular rate is properly calculated under 12 N.Y.C.R.R. § 146-3.5(b) by dividing his total weekly earnings by the lesser of forty hours or the actual number of hours he worked in the workweek.

128. Defendants failed to pay Plaintiff overtime compensation at one and one-half times his regular rate for the hours he worked in excess of forty hours in each workweek in which he worked more than forty hours, in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. § 146-1.4.

19

129.    Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of NYLL § 663, and Defendants did not have a good faith basis to believe that their underpayment of wages complied with the NYLL.

130.    As a direct and proximate result of Defendants' violations, Plaintiff is entitled to recover his unpaid overtime compensation for the six-year period preceding the filing of this Complaint through the date of judgment; liquidated damages in an amount equal to one hundred percent of that underpayment pursuant to NYLL §§ 198(1-a) and 663(1); prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004; and reasonable attorneys' fees and costs. The precise amounts due will be determined at trial.

## FOURTH CAUSE OF ACTION

**Failure to Pay Minimum Wages in Violation of the New York Labor Law**

**NYLL §§ 652 and 663; 12 N.Y.C.R.R. § 146-1.2**

**(On Behalf of Plaintiff)**

131.    Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

132.    NYLL § 652 and 12 N.Y.C.R.R. § 146-1.2 required Defendants to pay Plaintiff not less than the applicable basic minimum hourly wage for each hour he worked.

133. During the Third Period, Defendants paid Plaintiff at an effective rate of approximately $6.25 to $6.67 per hour, which was below the applicable basic minimum hourly wage of $17.00 per hour.

134.    In addition, and pleaded in the alternative, to the extent it is determined that the compensation Defendants paid Plaintiff during the Second Period was intended to compensate him for all of the hours he actually worked, Defendants paid Plaintiff at an effective rate of approximately $14.57 to $14.94 per hour during that period, which was below the applicable basic minimum hourly wage of $16.50 per hour in 2025 and $17.00 per hour in 2026.

135. Defendants' failure to pay Plaintiff the minimum wage was willful within the meaning of NYLL § 663, and Defendants did not have a good faith basis to believe that their underpayment of wages complied with the NYLL.

136. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to recover his unpaid minimum wages; liquidated damages in an amount equal to one hundred percent of that underpayment pursuant to NYLL §§ 198(1-a) and 663(1); prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004; and reasonable attorneys' fees and costs. Plaintiff does not seek to recover the same wages twice under this and any other cause of action.

## FIFTH CAUSE OF ACTION

**Failure to Pay Spread-of-Hours Compensation in Violation of the New York Labor Law**

**NYLL §§ 652 and 663; 12 N.Y.C.R.R. § 146-1.6**

**(On Behalf of Plaintiff)**

137. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

138. Section 146-1.6 of Title 12 of the New York Codes, Rules and Regulations required Defendants to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate for each workday on which the spread of hours exceeded ten hours.

139. On each Friday, Saturday, Sunday, and Monday during the Second Period, the interval between the beginning and the end of Plaintiff's workday exceeded ten hours.

140. Defendants failed to pay Plaintiff the additional hour of pay at the basic minimum hourly wage rate for any such workday, in violation of 12 N.Y.C.R.R. § 146-1.6.

141. Defendants' failure to pay spread-of-hours compensation was willful within the meaning of NYLL § 663, and Defendants did not have a good faith basis to believe that their failure to pay such compensation complied with the NYLL.

142. As a direct and proximate result of Defendants' violations, Plaintiff is entitled to recover his unpaid spread-of-hours compensation; liquidated damages in an amount equal to one

hundred percent of that underpayment pursuant to NYLL §§ 198(1-a) and 663(1); prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004; and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### Failure to Pay Earned Wages in Violation of the New York Labor Law

### NYLL §§ 191, 193(5), 198(3), and 663

### (On Behalf of Plaintiff)

143.    Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

144.    The wages Plaintiff earned for his restaurant work during the workweeks of on or about April 7, April 14, and April 21, 2026 constitute "wages" within the meaning of NYLL § 190(1). Plaintiff was a "manual worker" within the meaning of NYLL  190(4), because he spent more than twenty-five percent of his working time performing physical labor, and was therefore entitled to weekly payment of wages pursuant to NYLL  191(1)(a). Plaintiff performed the work for which those wages were earned, and the wages became due and payable.

145. Defendants failed to pay Plaintiff any portion of the restaurant wages he earned during those three workweeks — a total of not less than $2,940.00. Plaintiff's claims for overtime and minimum wage underpayments during those same workweeks are set forth separately in his other causes of action, and Plaintiff does not seek to recover the same wages twice.

146.    Defendants' total failure to pay Plaintiff the wages he earned violated NYLL  191 and NYLL § 193(5), which provides that there is no exception to liability under that section for the unauthorized failure to pay wages, benefits, or wage supplements, and entitles Plaintiff to recover those wages pursuant to NYLL §§ 198(3) and 663(1).

147.    Defendants' failure to pay Plaintiff his earned wages was willful, and Defendants did not have a good faith basis to believe that their nonpayment complied with the NYLL.

148.    As a direct and proximate result of Defendants' violations, Plaintiff is entitled to recover the full amount of his unpaid earned wages; liquidated damages in an amount equal to one hundred percent of those unpaid wages pursuant to NYLL §§ 198(1-a) and 663(1); prejudgment

interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004; and reasonable attorneys' fees and costs. Plaintiff does not seek to recover the same wages twice under this and any other cause of action.

### SEVENTH CAUSE OF ACTION

**Failure to Provide Wage Notice at Times of Hiring in Violation of the New York Labor Law**

**NYLL §§ 195(1) and 198(1-b); 12 N.Y.C.R.R. § 146-2.2**

**(On Behalf of Plaintiff)**

149.    Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

150.    NYLL § 195(1) and 12 N.Y.C.R.R. § 146-2.2 required Defendants to provide Plaintiff, at the time of hiring, with a written notice, in English and in Plaintiff's primary language, containing his rate or rates of pay and the basis thereof; his overtime rate of pay; the regular pay day designated by the employer; the name of the employer and any names under which it does business; the physical address of the employer's main office or principal place of business and a mailing address if different; and the employer's telephone number.

151. Defendants never provided Plaintiff with the notice required by NYLL § 195(1), in English, in Spanish, or in any other language, at the time of either his initial hiring in or about May 2023 or his rehiring in or about April 2025, or at any time thereafter.

152.    152. Defendants' failure to provide that notice caused Plaintiff concrete and particularized injury. Without the notice, Plaintiff did not know and could not ascertain the hourly rate at which his salary credited his work, the overtime rate to which he was entitled, or the number of hours his weekly salary was intended to cover. Plaintiff was unable to verify whether his compensation complied with applicable minimum wage and overtime laws, unable to make an informed decision about whether to continue working for Defendants or to seek other employment on more favorable terms, and unable to provide prospective landlords, creditors, or government agencies with documentation of his wage rate when such documentation was requested in connection with housing applications, credit applications, or applications for public benefits. Plaintiff was also unable to confirm the accuracy of any tax withholdings or to file accurate personal tax returns, because he did not know the hourly rate or rates at which he was being

compensated or the number of hours for which Defendants purported to pay him. Plaintiff experienced confusion and uncertainty about the basic terms of his compensation throughout his employment. He was therefore unable to recognize that Defendants were underpaying him, unable to quantify the shortfall, unable to challenge Defendants' pay practices, and unable to seek and obtain his lawfully earned wages in a timely manner. He was deprived of the use of those wages as a result.

153. As a direct and proximate result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages of fifty dollars ($50.00) for each workday that each violation occurred or continued to occur, up to a maximum of five thousand dollars ($5,000.00) per violation, together with reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

## EIGHTH CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements in Violation of the New York Labor Law**

**NYLL §§ 195(3) and 198(1-d); 12 N.Y.C.R.R. § 146-2.3**

**(On Behalf of Plaintiff)**

154. Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein.

155. NYLL § 195(3) and 12 N.Y.C.R.R. § 146-2.3 required Defendants to furnish Plaintiff, with every payment of wages, a statement listing the dates of work covered by the payment; Plaintiff's name; the name, address, and telephone number of the employer; the rate or rates of pay and the basis thereof; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours and overtime hours worked.

156. Defendants never furnished Plaintiff with any such statement, accurate or otherwise, with any payment of wages during his employment. Plaintiff was paid in cash and received no writing of any kind concerning his wages.

157. 157. Defendants' failure to furnish accurate wage statements caused Plaintiff concrete and particularized injury. Because he received no wage statements, Plaintiff could not determine the number of hours for which Defendants were crediting and compensating him, could

24

not compare the hours he actually worked with the wages he received, and could not detect or quantify the difference between what he was paid and what the law required. Without any written record of his wages, Plaintiff was unable to verify whether Defendants were making any tax withholdings on his behalf or reporting his earnings to tax authorities, and was unable to file accurate personal tax returns. Plaintiff was also unable to present pay documentation to prospective landlords, creditors, or government agencies in connection with housing applications, credit applications, or applications for public benefits, and was denied the ability to demonstrate a verifiable employment and earnings history. Plaintiff could not confirm from pay period to pay period whether he was being compensated for all hours he had worked or whether hours had been omitted, and experienced confusion and uncertainty about his compensation each time he was handed cash with no accompanying documentation. He was therefore unable to identify the underpayment, unable to raise it with Defendants, unable to determine the amount of the wages Defendants had failed to pay him, and unable to seek and recover those wages in a timely manner. He was deprived of the use of those wages as a result.

158. As a direct and proximate result of Defendants' violation of NYLL § 195(3), Plaintiff is entitled to recover statutory damages of two hundred fifty dollars ($250.00) for each workday that the violation occurred or continued to occur, up to a maximum of five thousand dollars ($5,000.00) per violation, together with reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff GUILLERMO REYES, individually and on behalf of all others similarly situated, respectfully requests that this Court enter judgment in his favor and against Defendants EL CINCO CORP., EL TRIO CORP., and DEYANIRA SANTAMARIA a/k/a DEYANIRA SANTAMARIA LUNA, jointly and severally, as follows:

    a.  Designating this action as a collective action on behalf of the FLSA Collective, and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons, apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing individual consent forms;

25

b.　Awarding Plaintiff and the members of the FLSA Collective their unpaid overtime compensation under the FLSA, together with an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

c.　Awarding Plaintiff his unpaid minimum wages under the FLSA, together with an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

d.　Awarding Plaintiff his unpaid overtime compensation under the NYLL and the Hospitality Wage Order;

e.　Awarding Plaintiff his unpaid minimum wages under the NYLL and the Hospitality Wage Order;

f.　Awarding Plaintiff his unpaid spread-of-hours compensation under 12 N.Y.C.R.R. § 146-1.6;

g.　Awarding Plaintiff the full amount of the earned wages Defendants failed to pay him, in an amount of not less than $2,940.00, pursuant to NYLL §§ 191, 193(5), 198(3), and 663;

h. Awarding Plaintiff liquidated damages in an amount equal to one hundred percent of his unpaid wages pursuant to NYLL §§ 198(1-a) and 663(1), provided that, to the extent Plaintiff recovers liquidated damages under the FLSA for the same violations, Plaintiff seeks the greater of the FLSA or NYLL liquidated damages for overlapping periods, and does not seek to recover both;

i. Awarding Plaintiff statutory damages of $50.00 for each workday on which Defendants' violations of NYLL § 195(1) occurred or continued to occur, up to a maximum of $5,000.00 per violation, pursuant to NYLL § 198(1-b);

j. Awarding Plaintiff statutory damages of $250.00 for each workday on which Defendants' violation of NYLL § 195(3) occurred or continued to occur, up to a maximum of $5,000.00 per violation, pursuant to NYLL § 198(1-d);

k.　Awarding Plaintiff prejudgment interest on his NYLL wage damages pursuant to N.Y. C.P.L.R. §§ 5001 and 5004;

l.   Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

m.  Awarding Plaintiff and the members of the FLSA Collective their reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b), and awarding Plaintiff his reasonable attorneys' fees pursuant to NYLL §§ 198 and 663;

n.   Awarding Plaintiff the costs and disbursements of this action;

o.  Providing that, if any amounts awarded under the NYLL remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of such NYLL damages shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

p.   Granting such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York

_____July 30,___, 2026

STILLMAN LEGAL, P.C.

By: _Lina F Stillman, Esq._
Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Telephone: (212) 203-2417
Fax: (212) 203-9115
Email: LS@StillmanLegalPC.com

*Attorneys for Plaintiff*

27